UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENNETH MERCER                             CIVIL ACTION

VERSUS                                     NO: 10-117

CHEM CARRIERS LLC                          SECTION: "J" (3)


**ORDER AND REASONS**

Before the Court is Defendant's **Motion in Limine (Rec. Doc. 133)** and Plaintiff's Opposition.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Plaintiff Kenneth Mercer ("Mercer") brought suit against Defendant Chem Carriers Towing, L.L.C. ("Chem Carriers") in the Eastern District of Louisiana.  Plaintiff seeks relief under the Jones Act and the General Maritime Law for the injuries he sustained when employed as a mate by Defendant. Plaintiff's left foot was amputated on April 15, 2009, when he was securing a barge to Defendant's tug M/V LAURA BANTA. Jimmie Kirkman was the licensed captain at the controls of M/V LAURA BANTA at the time of the incident.

Captain Kirkman began his hitch on M/V LAURA BANTA on April

1

6, 2009. Captain Kirkman worked a total of 6 hours, 40 minutes on April 6th; 5 hours, 50 minutes on April 7th; 5 hours, 45 minutes on April 8th; 5 hours, 55 minutes on April 9th; 5 hours, 35 minutes on April 10th; 6 hours, 10 minutes on April 11th; 1 hour, 30 minutes on April 12th; and 7 hours, 15 minutes on April 13th. On April 14th, Captain Kirkman worked from 0730 hours until 0910 hours, or 1 hour, 40 minutes. The tug's main engines were shut down until 1130 hours, during which time he did not operate the vessel. Captain Kirkman then operated the vessel for one hour, from 1130 hours to 1230 hours. The tug's main engines were then shut down for the next 4 hours, 25 minutes. At 1655 hours, Captain Kirkman again operated the vessel for 3 hours, 5 minutes until 2000 hours. Captain Kirkman worked a total of 5 hours, 45 minutes on April 14th. At 2000 hours that evening, he shut down the tug's main engines.

It is disputed how many hours the captain actually worked on the day of the accident. Captain Kirkman then slept for at least 9 hours and did not resume working until 10.5 hours later when he came on duty at 0630 hours on April 15th.  According to Defendant, Captain Kirkman worked until 1135 hours (5 hours, 5 minutes), at which point he shut down the tug's main engines. The tug's main engines were shut down until 1600 hours, a period of 5 hours, 25 minutes. Captain Kirkman had the opportunity to sleep

during this time period. Captain Kirkman began operating the vessel again at 1600 hours. Plaintiff's injury occurred at 1635 hours. Defendant states that Captain Kirkman worked a total of 5 hours, 40 minutes on April 15th. In the 24-hour period from 1635 hours on April 14th until 1635 hours on April 15th, Defendant asserts that Captain Kirkman worked a total of only 8 hours, 45 minutes, with 10.5 hours of rest in between. Captain Kirkman testified that he was not tired or fatigued at the time of Plaintiff's injury.

Plaintiff contends that Captain Kirkman's work schedule violated the 12-hour rule, that Captain Kirkman was fatigued, and his fatigue caused Plaintiff's injury. According to Plaintiff, under Defendant's working policies in place at the time of this incident, Kirkman was expected to work during the hours of 0600 and 1800. Kirkman, however, also worked whenever necessary, day or night. Kirkman had followed that irregular work pattern for the nine days he had worked aboard the M/V Laura Banta prior to the incident.

According to Plaintiff, in the 24-hour period immediately prior to the Plaintiff's injury, Kirkman had worked 13.5 hours. On April 14, Kirkman worked from 1635 to 2000 hours (3 hours and 25 minutes). On April 15, Kirkman worked from 0630 to 1635 on April 15 (10 hours and five minutes). There was no emergency

during the 24 hours prior to Plaintiff's injury permitting

Kirkman to work in excess of 12 hours. Thus, Plaintiff argues

that Kirkman worked significantly more than 12 hours in the 24-

hour period immediately preceding Plaintiff's injury incident, in

violation of the federally mandated limit on safe hours of

service.

Further, Plaintiff asserts that at no time during these 13.5

working hours did Kirkman "rest." The Coast Guard defines "rest"

as "a period of time during which the person concerned is off

duty, is not performing work…and is allowed to sleep without

being interrupted." According to Plaintiff, Kirkman was awake and

on-duty for the 13.5 working hours.

**THE PARTIES' ARGUMENTS:**

Defendant seeks to exclude testimony and evidence that would

imply that Defendant violated 46 U.S.C. § 8104(h), which provides

that a licensed mariner may not work more than 12 hours in a

consecutive 24 hour period. According to Defendant, case law

interprets the 24-hour period as beginning and ending on one

calendar date. Defendant contends that Plaintiff relies upon a

portion of a U.S. Coast Guard Policy Letter, which does not have

the force of law, to supplant the plain wording of this statute

and its interpretation by the courts. One part of the Policy

Letter states that "46 U.S.C. 8104(h) limits all licensed

operators on towing vessels … to working no more than 12 hours a day except in an emergency", which is consistent with the text of the statute and interpreting case law. It also states that 46 U.S.C. § 8104(h) "establishes that licensed operators of towing vessels may not work in excess of 12 hours in any 24-hour period." Defendant argues that Plaintiff ignores the actual text of the statute and relies on a selective reading of this Policy Letter and then provides his own interpretation of what the Coast Guard takes that to mean. Plaintiff seeks to have his liability expert, Gary Hensley, instruct the jury on 46 U.S.C. § 8104(h) as he understands the policy letter to interpret a portion of it. But an expert's legal conclusion invades the court's province. Thus, as the statute takes precedence over the Policy Letter, Plaintiff should be forbidden from introducing testimony and evidence that the interpretation of the statute under this Policy Letter controls.

Plaintiff argues that Defendant violated 46 U.S.C. § 8104 when its boat captain worked well beyond the 12-hour limit (during a consecutive 24-hour period) at the time of the subject incident and should therefore be held negligent as a matter of law.  Plaintiff believes that the 24-hour period is a moving target which began the moment he was injured and is then calculated backward to capture any hours that may have been

worked on the previous calendar date.

**DISCUSSION:**

The issue presented is whether the 24-hour period referred to in the statute is a calendar day starting at 12:01a.m. or whether the countdown starts from the time the injury occurred, going back 24 hours. Under 46 U.S.C. § 8104(h), "an individual licensed to operate a towing vessel may not work for more than 12 hours in a consecutive 24-hour period except in an emergency." The Coast Guard Policy Letter cited by Plaintiff provided guidance to "summarize and clarify…work-hour limitations and watchkeeping for licensed operators." G-MOC Policy Letter 4-00, Rev-1 (Exhibit 1) at 1. The Policy Letter states that "46 U.S.C. § 8104(h) establishes that licensed operators of towing vessels . . . may not work in excess of 12 hours in any consecutive 24-hour period, except in an emergency." Id. at 3.

Judge Berrigan of this Court previously addressed both the application of the 12-hour rule and whether The Pennsylvania rule creates a presumption of negligence based on an alleged violation of the 12-hour rule in Swan Crewboats, Inc. v. Phipps, 01-3339, 2002 WL 1733647 (E.D.La. July 24, 2002). In that case, the alleged violation of the 12-hour rule occurred two days prior to the accident; however, this fact was contested by Plaintiff who

asserted that the violation occurred within twenty-four hours of

the accident. Id. at *2. Judge Berrigan concluded that "[t]o the

extent the one-hour violation of the 12-Hour Rule occurred prior

to twenty-four hours preceding the time of the alleged accident,

such a violation is *de minimis* as a possible factor causing the

injuries alleged here and is thus irrelevant." Id. Judge Berrigan

further held that The Pennsylvania rule is limited to cases where

the vessel struck some other vessel, object, or land. Id. at *1.

The Court was unwilling to extend to the Pennsylvania Rule so as

"to create a presumption of negligence upon a finding of *any*

statutory violation involving an injury aboard a vessel in *any*

situation at sea whatever." Id. Such a broad reading would be

inconsistent with a "century of caselaw" interpreting the rule.

Id. Thus, in Swan Crewboats, the Court interpreted the 12-hour

rule to apply to the time period immediately preceding the

accident, but to not trigger The Pennsylvania rule unless the

vessel struck another object. The Court also noted that Reyes v.

Vantage S.S. Co., 609 F.2d 140 (5th Cir. 1980), although an

example of the application of The Pennsylvania Rule in which the

vessel at issue did not involve any kind of impact, is

inapposite. Id. In Reyes, the presumption of negligence was

created by the "search and rescue doctrine," an independent

foundation for creation of a presumption of negligence by the

7

ship owner. Id.

The Fifth Circuit briefly addressed the issue in Archer
Daniels Midland Co. v. M/V Freeport, 909 F.2d 809, 810-11 and n.4
(5th Cir. 1990). The Court concluded there was no violation of
section 8104(h), where the captain was scheduled to work for 24
hours but actually worked for 11 hours. The Court noted that
"[u]p to the time of the collision, there had been no violation
of the statute." Id. at 810. Thus, the Court seems to imply that
to calculate the 24-hour period, it is necessary to countdown
from the time of the injury.

Defendant relies on a decision by the Western District of
Washington in Elms v. Crowley Marine Service, Inc., c95-363Z,1996
WL 881928 (W.D.Wash. Sept. 16, 1996). In that case the court
reviewed how many hours Plaintiff worked prior to the accident,
starting the count at midnight. However, it was clear in that
case that there was no need to go past midnight, because
Plaintiff's accident occurred at 2045; prior to that Plaintiff
had worked for 16 hours and 40 minutes. The court in that case
did not state *per se* that counting for the purpose of the 12-hour
rule necessarily starts at midnight. In fact the court's
conclusions of law refer to "work in excess of 12 hours in a
*consecutive 24-hour period, during the time immediately preceding*

*Elms' injury*," which is consistent with what this Court's interpretation in Swan Crewboats. Elms, at \*5 (emphasis added).

Another decision cited by Defendant is Garrie v. James L. Cray, Inc., 912 F.2d 808 (5th Cir. 1990). In dicta, the Fifth Circuit mentioned that Plaintiff piloted the vessel "on both a 'day run' and a 'night run' within the same twenty-four-hour period and thus worked in excess of the twelve hours per day permitted." Id. at 809. Defendant interprets this language as supporting Defendant's reading of the statute. However, Defendant ignores the footnote following the quoted sentence, which quotes section 8104(h) as prohibiting an individual licensed to operate a towing vessel from working "more than 12 hours in a *consecutive 24-hour period* except in an emergency." Id., n.1 (emphasis added).

In Wylie v. Foss Maritime Co., C 06-07228 MHP, 2008 WL 4104304, \*10 (N.D. Cal. Sep. 4, 2008), without much discussion, the court briefly mentions that section 8104(h) "limits work on certain towing vessels to no more than 12 hours in a day." The case does not explicitly state that the counting of the 12-hour period starts at midnight. So Defendant's reliance on this case is not justified.

Thus, although there appears to be no governing Fifth

Circuit case directly on this issue, the plain language of the statute, together with the Policy Letter and a previous decision by this Court are in line with Plaintiff's interpretation.

Accordingly, **IT IS ORDERED** that Defendant's **Motion in Limine (Rec. Doc. 133)** is **DENIED**. Plaintiff will not be precluded from introducing evidence of Defendant's potential section 8104(h) violation. However, there is a factual dispute regarding the number of hours that Captain Kirkman actually spent on duty in the 24-hour period prior to the accident and whether The Pennsylvania rule is applicable in the circumstances of this case.

New Orleans, Louisiana, this 17th day of May, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE